Opinion issued November 10, 2011

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00134-CR

———————————

Dennis Johnson JR., Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 174th District Court

Harris County, Texas



Trial Court Case No. 1189448

 



 

MEMORANDUM OPINION

          A
jury convicted appellant, Dennis Johnson Jr., of the second degree felony
offense of possession of between four and two hundred grams of a controlled
substance, cocaine, and, after finding the allegations in an enhancement
paragraph true, assessed punishment at eight years’ confinement.[1]  In two issues, appellant contends that (1)
the trial court erred in denying his motion to suppress evidence on the grounds
that the arresting officer lacked either probable cause or reasonable suspicion
to detain him and that the officer failed to obtain a search warrant for his
apartment and (2) the trial court erroneously admitted two exhibits during the
punishment phase because the State did not sufficiently prove that these
exhibits were appellant’s criminal records.

          We modify
the judgment of the trial court and affirm as modified.

Background

          On
October 28, 2008, Harris County Sheriff’s Department Deputy A. Chapa was on
afternoon patrol in north Harris County when he received information that
narcotics transactions were occurring at a nearby Chevron station.  The tipster, who was not identified, informed
Deputy Chapa that a “medium to heavy-build black male, [with a] short haircut,
[and] a tattoo on his neck” was selling drugs out of a small, green four-door
Mitsubishi.  Deputy Chapa drove to the
Chevron station and “immediately observed the vehicle that the [tipster] had
described.”[2]  Deputy Chapa walked over to the driver’s side
window of the vehicle and knocked, and the driver, later identified as
appellant, rolled down the window.

          Deputy
Chapa noticed that appellant had a tattoo on his neck and testified that, upon
observing this tattoo, he “knew for sure that [the driver] was the person that
the—that [he] had previously been
informed of.”  Deputy Chapa also immediately
noticed that “[t]here was a strong[,] distinct [odor] of marijuana coming from
[appellant’s] person and from within the vehicle.”  He asked appellant about the odor of
marijuana, and appellant responded that he did not have any marijuana in the
vehicle.  Deputy Chapa then informed
appellant that, based on his training and experience, he had reason to believe
that appellant had marijuana either on his person or in his vehicle due to the
strong odor.  Appellant again informed
Deputy Chapa that he did not have any marijuana and stated that Chapa “was free
to check [appellant’s] vehicle.”

          Deputy
Chapa testified that, at the time of this conversation, appellant was not under
arrest, and he was free to leave if he so desired.  He agreed with the prosecutor that there was
space for appellant to drive away from the Chevron station.  Deputy Chapa further testified that he was
being polite to appellant, that he was not raising his voice, and that he did
not have his service weapon out of its holster.

          Deputy
Chapa then asked appellant to step out of the car, and he conducted a brief pat-down
to determine if appellant was carrying any weapons.  Appellant told Deputy Chapa that the car
belonged to his common-law wife, later identified as Lashieka Johnson, who was
sitting in the front passenger seat.  Deputy
Chapa approached the passenger side of the car, informed Johnson of everything
he had said to appellant thus far regarding the odor of marijuana in the
vehicle, and asked her for consent to search the vehicle.  She agreed and signed a written consent to search
form.  This form informed Johnson that
she had the “lawful right to refuse to consent to such a search.”  Deputy Chapa testified that Johnson was not
under any kind of threat or coercion when she signed the form and that she had
a chance to read over the form before she signed it.  Johnson never revoked her consent to the
search, and appellant never told her not to allow Deputy Chapa to conduct the
search.

          Deputy
Chapa did not find any contraband during the search of the car.  He walked to the rear of the vehicle to speak
to appellant, and he smelled a “very distinct, fresh, unburned marijuana odor
coming from [appellant’s] person.”[3]  Deputy Chapa asked appellant to open his
mouth “because [he] had reason to believe that there was somewhere on his
person concealed narcotics, possibly marijuana.”  After appellant complied, Deputy Chapa
observed “a green leafy substance caked about his inner cheek and tongue
area.”  Deputy Chapa asked appellant if
he had swallowed marijuana, and appellant admitted that he had swallowed a
small bag of marijuana when he saw Chapa pull into the Chevron station parking
lot.

          At
this point, Deputy Chapa informed appellant that he had previously spoken with
someone who told Chapa that he was on his way to the Chevron station to
purchase marijuana from appellant and that this person had given Chapa an
accurate description of appellant and his vehicle.  Appellant admitted that he was supposed to
meet that person at the Chevron station for the purpose of selling him
marijuana.  Deputy Chapa asked appellant
if he had any additional narcotics at his residence or another location, and
appellant told him that he had “a small amount of marijuana and possibly powder
cocaine at his place of residence.”  Appellant
informed Deputy Chapa of the precise location of the additional drugs in his
apartment.  Appellant told Deputy Chapa
that Johnson was the leaseholder of the apartment where the drugs were located,
which Johnson confirmed, and that Johnson had no knowledge of the drugs.  Both appellant and Johnson gave Deputy Chapa
consent to search the apartment, and Johnson signed another consent to search
form.  Deputy Chapa testified that
neither appellant nor Johnson revoked their consent to search, that he had not
threatened Johnson to obtain her consent, and that she had freely and
voluntarily consented to the search.

          At
the apartment, Deputy Chapa went straight to the location identified by
appellant—the top of the kitchen
cabinet—and discovered several small
bags of marijuana, a small bag of a substance that field-tested positive as cocaine,
and a scale.

          On
cross-examination at the suppression hearing, Deputy Chapa testified that he
received the initial tip from an individual whom he had stopped for a traffic violation.  Deputy Chapa did not record this individual’s
name, and he did not issue a ticket for the traffic violation.  Deputy Chapa agreed with defense counsel that
appellant’s car was legally parked at the Chevron station and that he did not
observe appellant engage in any illegal activity before he approached the car.

Deputy Chapa testified that he
identified the substance in appellant’s mouth as marijuana, but he admitted
that did not take any samples of this substance for testing.  Deputy Chapa stated that, after he observed
the particles of marijuana in appellant’s mouth, he detained appellant “for
further investigation” of whether he had tampered with evidence.  He agreed with defense counsel that appellant
was under arrest at this point.  Deputy
Chapa also agreed that appellant then admitted that he had planned to sell
marijuana to the anonymous tipster and that he had narcotics at his
residence.  He further agreed that he
obtained Johnson’s consent to search the apartment after he arrested
appellant.  Deputy Chapa estimated that
thirty minutes elapsed between when he arrived at the Chevron station and when
he left for appellant’s residence and that less than an hour had elapsed when
Johnson let him into the apartment.  Deputy
Chapa acknowledged that he never attempted to obtain a search warrant for appellant’s
residence.

          Appellant
called Johnson to testify on his behalf at the suppression hearing.  She testified that appellant picked her up
from work and that their two children were in the car with him.[4]  Appellant drove to the Chevron station, which
had an attached McDonald’s, so their daughter could eat dinner.  Johnson testified that, as they were sitting
in their car, “probably five or six [police] units . . .  swooped
up behind [them]” and ordered appellant to get out of the car.[5]  She stated that, as Deputy Chapa approached
the car, he immediately told appellant to get out of the car and told her to
put her hands on the dashboard. 
According to Johnson, Deputy Chapa did not converse with her or
appellant before he ordered appellant out of the car and Chapa took appellant
directly to his patrol car.  Johnson did
not smell the odor of marijuana in the car.

          According
to Johnson, the officers asked her and the children to get out of the car and they
then walked a police dog around the car.[6]  Johnson testified that the officers searched
the car and Deputy Chapa commented that her children looked healthy and well
taken care of, “so we’re not going to worry about you” and “we’re not going to
call CPS on you.”  Johnson also testified
that Deputy Chapa “threatened [her] to sign a search warrant to go to [her]
house.”  She stated that Deputy Chapa did
not allow her to call anyone and, before she signed any forms, he told her:

We’re going to keep
[appellant] right here and you’re going to stay right here, too, and we’re—I’m
going to send one of my partners back to headquarters to have a judge sign on
that search warrant to come and search your house if you don’t sign on it.  And if we find anything in that house, you’re
going to jail and your kids are going to CPS.

 

She testified that she did not freely and
voluntarily sign the consent to search form; instead, she signed it because she
was “in fear for [her] kids’ safety.”[7]  She stated that she asked Deputy Chapa if he
had a search warrant, and he told her that the consent to search form was a
search warrant.

          Johnson
further testified that, en route to her apartment, Deputy Chapa stopped at a
liquor store where he called her apartment complex, at Johnson’s request, to
make sure that her landlord would not be on the premises during the search of
her apartment.[8]  Johnson stated that this location was where
he had her sign both of the consent-to-search forms and that they waited at
this location for fifteen or twenty minutes before driving to the
apartment.  When Johnson signed the
forms, she was “still afraid of what [the officers] were going to do if [she]
didn’t [sign.]”  She testified that she
did not freely and voluntarily let Deputy Chapa into her apartment because she
“was under the fear of CPS.”

          On
cross-examination, Johnson testified that Deputy Chapa did not let her read the
consent-to-search form, but he instead told her to sign it without explaining
anything.  She also stated that the form
was on a clipboard and that the clip covered up the part of the document that
said “Voluntary Consent to Search,” so that all she could see was the place for
her to sign.  She also agreed that she
asked Deputy Chapa if they could wait before going to the apartment so her
landlord could leave and that “the police officers did [her] a favor by holding
up the time frame a little bit.”

          The
trial court denied appellant’s motion to suppress.  The trial court did not issue written
findings of fact and conclusions or law, nor did the court state any findings
and conclusions on the record at the end of the hearing.  The jury ultimately found appellant guilty of
possession of between four and two hundred grams of cocaine.

          The
indictment included an enhancement paragraph alleging that appellant was
convicted of the felony offense of possession with the intent to deliver a
controlled substance on July 23, 2001, in cause number 0869105 in the 263rd
District Court of Harris County.  During
the punishment phase, the trial court admitted, without objection, State’s
Exhibit 13, a “jail card” that reflected that Dennis Johnson Jr. had been
arrested for possession with intent to deliver a controlled substance on
February 15, 2001.  This exhibit
reflected that the case, cause number 0869105, was assigned to the 263rd
District Court of Harris County.

The State then called Harris County
Sheriff’s Department Deputy R. Schield to testify as a fingerprint expert.  Deputy Schield compared appellant’s
fingerprints to the fingerprint contained on State’s Exhibit 8, the first two
pages of which were a certified copy of a judgment and sentence from a 1996 conviction
for possession of marijuana, cause number 9623579, and he concluded that the fingerprints
matched.  The State then asked if Deputy
Schield was able to make a comparison between appellant’s fingerprints and the
fingerprint on State’s Exhibit 15, a judgment and sentence from a July 23, 2001
conviction for possession with intent to deliver cocaine.  Deputy Schield testified that he was not able
to make a comparison because “[t]he print on State’s Exhibit 15 is blurred
out.”  The State then asked Deputy
Schield if the cause numbers stated on Exhibit 13, the jail card, and Exhibit
15 matched, and Deputy Schield testified that they did.  He stated that the cause number for both
exhibits was 869105.

          After
the State offered several certified copies of judgments, including Exhibits 8
and 15, into evidence, defense counsel questioned Deputy Schield on voir
dire.  Defense counsel asked Deputy
Schield about the last four pages of Exhibit 8, which were the conditions of
probation for a defendant named Miguel Angel Lopez in cause number 9623577.  Deputy Schield agreed that this person was
not appellant.  Defense counsel then made
the following objections:

[Defense
counsel]:          Your Honor, I would
object to the admission of document 15 because the officer cannot testify that
that is Mr. Johnson’s print on document 15. 
By his own admission, the print cannot be matched up.  We would object to that one.  We would also object, Your Honor, to document
8.

 

The Court:            Just a minute.  You’re objecting to 15?

 

[Defense
counsel]:          Yes, sir.  I’m objecting to document 8 that’s identified
as paperwork of [Miguel Angel] Lopez.  I
have no idea who he is and he’s not the defendant.

 

The trial court overruled defense counsel’s
objections and admitted Exhibits 8 and 15.

          The
jury found the allegations in the enhancement paragraph true and assessed
punishment at eight years’ confinement.  This
appeal followed.

Motion to Suppress

          In
his first issue, appellant contends that the trial court erred in denying his
motion to suppress because (1) Deputy Chapa did not have probable cause or
reasonable suspicion to detain him at the Chevron station and (2) Chapa
impermissibly searched his apartment without obtaining a search warrant.

A.              
Standard of Review

We review a denial of a motion to
suppress for an abuse of discretion.  Shepherd v. State, 273 S.W.3d 681, 684
(Tex. Crim. App. 2008) (citing State v.
Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).  When we review a trial court’s denial of a
motion to suppress, we give “almost total deference to a trial court’s express
or implied determination of historical facts [while] review[ing] de novo the court’s application of the
law of search and seizure to those facts.” 
Id.  The question of whether a given set of
historical facts constitutes a consensual police encounter or an investigatory
detention is a question of law that we review de novo.  See
State v. Castleberry, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011); State v. Garcia-Cantu, 253 S.W.3d 236,
241 (Tex. Crim. App. 2008).

We view the evidence in the light
most favorable to the trial court’s ruling. 
Wiede v. State, 214 S.W.3d 17,
24 (Tex. Crim. App. 2007) (quoting State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)).  The trial court is the “sole trier of fact
and judge of the credibility of the witnesses and the weight to be given to
their testimony.”  St. George v. State, 237 S.W.3d 720, 725 (Tex. Crim. App.
2007).  The trial court may choose to
believe or disbelieve any part or all of a witness’s testimony.  Green
v. State, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996).  We sustain the trial court’s ruling if it is
reasonably supported by the record and correct on any theory of law applicable
to the case.  Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

B.              
Justification for Initial Interaction
with Appellant

Appellant first contends that the
trial court erred in denying his motion to suppress because the anonymous tip
received by Deputy Chapa was insufficient, standing alone, to establish either
probable cause or reasonable suspicion to detain him at the Chevron station.  The State contends that the interaction
between Chapa and appellant began as a consensual encounter, which does not
implicate the Fourth Amendment and therefore does not require probable cause or
reasonable suspicion, and became a lawful investigatory detention when Chapa
smelled the odor of marijuana coming from appellant’s car.  We agree with the State.

There are three distinct types of
interactions between law enforcement officers and citizens:  (1) consensual encounters, (2) investigatory
detentions, and (3) arrests.  State v. Woodard, 341 S.W.3d 404, 410–11
(Tex. Crim. App. 2011).  Consensual
encounters between the police and citizens do not implicate the Fourth
Amendment and its protections.  Id. at 411; Castleberry, 332 S.W.3d at 466. 
A police officer is “just as free as anyone else to stop and question a
fellow citizen,” and the officer needs no justification to request information
from a citizen.  Castleberry, 332 S.W.3d at 466; see
Woodard, 341 S.W.3d at 411.  A
consensual encounter occurs when “an officer approaches a citizen in a public
place to ask questions, and the citizen is willing to listen and voluntarily
answers.”  Crain v. State, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).  A citizen may, at will, terminate a
consensual encounter.  Woodard, 341 S.W.3d at 411.

An officer does not need probable
cause or reasonable suspicion to initiate a consensual encounter.  State
v. Velasquez, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999); see also Florida v. Bostick, 501 U.S.
429, 434, 111 S. Ct. 2382, 2386 (1991) (“Our cases make it clear that a seizure
does not occur simply because a police officer approaches an individual and
asks a few questions.  So long as a
reasonable person would feel free to ‘disregard the police and go about his
business,’ the encounter is consensual and no reasonable suspicion is
required.  The encounter will not trigger
Fourth Amendment scrutiny unless it loses its consensual nature.”) (internal
citations omitted).  “As long as the
person to whom questions are put remains free to disregard the questions and
walk away, there has been no intrusion upon that person’s liberty or privacy as
would under the Constitution require some particularized and objective
justification.”  United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870,
1877 (1980).

“Even when the officer did not
communicate to the citizen that the request for information may be ignored, the
citizen’s acquiescence to an official’s request does not cause the encounter to
lose its consensual nature.”  Woodard, 341 S.W.3d at 411; see also Castleberry, 332 S.W.3d at 466
(“[T]he fact that the citizen complied with the request does not negate the
consensual nature of the encounter.”). 
We consider the totality of the circumstances surrounding the
interaction, including the time and place, to determine whether a reasonable
person in the defendant’s position would have felt free either to ignore the
request or to terminate the interaction. 
See Woodard, 341 S.W.3d at
411; see also Garcia-Cantu, 253
S.W.3d at 243 (“Each citizen-police encounter must be factually evaluated on
its own terms; there are no per se
rules.”).  If the defendant had the
option to ignore the request or terminate the interaction, a Fourth Amendment
seizure has not occurred.  Woodard, 341 S.W.3d at 411.  Although we consider the totality of the
circumstances, “the officer’s conduct is the most important factor when
deciding whether an interaction was consensual or a Fourth Amendment
seizure.”  Id.; Crain, 315 S.W.3d at
49 (“[T]he court focuses on whether the officer conveyed a message that
compliance with the officer’s request was required.”).

Generally, “when an officer through
force or a showing of authority restrains a citizen’s liberty, the encounter is
no longer consensual” and becomes either an investigatory detention or an
arrest, both of which are seizures and require Fourth Amendment scrutiny.  Woodard,
341 S.W.3d at 411.  The pertinent inquiry
is whether a reasonable person would have felt free to decline the officer’s
requests or otherwise terminate the encounter. 
Crain, 315 S.W.3d at 49; Garcia-Cantu, 253 S.W.3d at 243 (“It is
the display of official authority and the implication that this authority
cannot be ignored, avoided, or terminated, that results in a Fourth Amendment
seizure.”).  Examples of surrounding
circumstances that may indicate a seizure are “the threatening presence of
several officers, the display of a weapon by an officer, some physical touching
of the person of the citizen, or the use of language or tone of voice
indicating that compliance with the officer’s request might be compelled.”  Mendenhall,
446 U.S. at 554, 100 S. Ct. at 1877.

When determining if a detention was
permissible under the Fourth Amendment, we must decide whether the officer had
reasonable suspicion that the citizen, is, has been, or soon will be, engaged
in criminal activity.  Woodard, 341 S.W.3d at 411; see also Ford v. State, 158 S.W.3d 488,
492 (Tex. Crim. App. 2005) (“Reasonable suspicion exists if the officer has
specific, articulable facts that, when combined with rational inferences from
those facts, would lead him to reasonably conclude that a particular person
actually is, has been, or soon will be engaged in criminal activity.”).  The State bears the burden of producing
specific articulable facts demonstrating reasonable suspicion.  Woodard,
341 S.W.3d at 411.

1.    
Initial Consensual Encounter

Here, Deputy Chapa testified that,
after receiving an anonymous tip that a man in a green four-door Mitsubishi was
selling narcotics at a nearby Chevron station, Chapa requested backup and drove
to the Chevron.  Deputies Chapa and Glaze
observed appellant’s vehicle, which matched the tipster’s description, legally
parked in a space by the building. 
Deputy Chapa parked nearby and left “space for [appellant’s] car to
drive away.”  Deputy Chapa approached the
driver’s side of appellant’s car and knocked on the window.  He immediately noticed that appellant matched
the physical description provided by the tipster and that a “strong distinct
[odor] of marijuana [was] coming from [appellant’s] person and from within the vehicle.”  Deputy Chapa testified that, throughout his
conversation with appellant, he was polite, he did not raise his voice, and he
did not have his weapon in his hand.[9]

At the suppression hearing, Johnson
testified that as her family sat in their car at the Chevron station, five or
six police units “swooped up behind [them].” 
According to her, Deputy Chapa immediately ordered appellant out of the
car and ordered her to put her hands on the dashboard.  She testified that Deputy Chapa did not
converse with either appellant or her before he ordered appellant to get out of
the car.

The record contains evidence that the
interaction occurred in a public place during the early evening; only two
officers approached appellant’s vehicle; they left space for appellant to drive
away if he so desired; Deputy Chapa knocked on appellant’s window and asked him
about the odor of marijuana; neither Chapa nor Deputy Glaze brandished his
weapon; Chapa spoke to appellant in a polite tone and without raising his
voice; and, although Glaze was present, he did not speak to appellant and there
is no testimony that he engaged in any threatening behavior.  Johnson testified to the contrary and stated
that “five or six” police units arrived at the Chevron station and that Deputy
Chapa immediately “ordered” appellant out of the car.  The trial court is the sole trier of fact and
judge of the credibility of the witnesses at a suppression hearing and had the
discretion to believe Deputy Chapa’s account of events over Johnson’s.  See St.
George, 237 S.W.3d at 725; Green,
934 S.W.2d at 98.

          We
conclude that, based on this record, the trial court could have concluded that
a reasonable person in appellant’s position would have felt free either to roll
down the window and speak with Deputy Chapa or to decline Chapa’s requests and
terminate the encounter.  Compare Castleberry, 332 S.W.3d at 468
(determining interaction was consensual encounter when officer approached,
asked for identification, inquired after defendant’s purpose, and interaction
took place around 3:00 a.m., but in “well-lit” area with “quite a bit” of foot
traffic), with Crain, 315 S.W.3d at
52 (“We . . . conclude that Griffin’s act of shining his
patrol car’s overhead lights in the appellant’s direction, coupled with his
request-that-sounded-like-an-order, to ‘come over here and talk to me,’ caused
the appellant to yield to Griffin’s show of authority—a reasonable person in the appellant’s shoes
would not have felt free to leave or decline the officer’s requests.”), and Garcia-Cantu, 253 S.W.3d at 249
(“[G]iven the facts that Officer Okland initiated the incident by blocking
appellee’s exit with his patrol car, turning on his spotlight, approaching
appellee’s truck with a long flashlight playing over the driver’s side,
immediately saying ‘What are you doing here?’, using his flashlight to wave the
passenger back to the rear of the truck, and, standing toe-to-toe with
appellee, shining his flashlight into appellee’s eyes, it is hard to conclude
that any reasonable person would feel free to drive or walk away or to terminate
the encounter.”).  Thus, Deputy Chapa’s
interaction with appellant began as a consensual encounter and not as a
detention.

2.    
Escalation to Investigatory Detention

          Appellant
contends that Deputy Chapa’s initial interaction with him was a detention that was
unjustified because the uncorroborated anonymous tip that Chapa received did
not, standing alone, establish reasonable suspicion to believe that appellant
was engaged in criminal activity.  See Florida v. J.L., 529 U.S. 266, 272,
120 S. Ct. 1375, 1379 (2000) (“The reasonable suspicion here at issue requires
that a tip be reliable in its assertion of illegality, not just in its tendency
to identify a determinate person.”).  As
we have already held, the initial interaction here was a consensual encounter,
not an investigatory detention, and police officers do not need any cause or
justification to initiate a consensual encounter.  See
Woodard, 341 S.W.3d at 411 (“[N]o justification is required for an officer
to request information from a citizen.”); Parks
v. State, 330 S.W.3d 675, 679 (Tex. App.—San Antonio 2010, pet. ref’d)
(“Police do not need any articulable cause to initiate an encounter because an
encounter does not implicate the Fourth Amendment.”).  Thus, because Deputy Chapa’s initial
interaction with appellant was a consensual encounter, it is irrelevant whether
he had sufficiently corroborated the anonymous tip so as to establish
reasonable suspicion at the time he first made contact with appellant.  See
Woodard, 341 S.W.3d at 413 (“Officer Warner did not need any information
about Woodard to justify the stop and inquiry. 
The lack of specific, credible, and verifiable information about the
accident and the driver originating from the anonymous tipster and Officer
Warner’s lack of personal knowledge concerning the commission of an offense by
Woodard are red herrings. . . .  Even without the
advance information about the accident and driver, Officer Warner was free to
stop, approach, and question Woodard.”).

          By
the time Deputy Chapa’s interaction with appellant escalated to an
investigatory detention, Chapa had developed probable cause to search appellant’s
person and his vehicle for contraband. 
Deputy Chapa received an anonymous tip that a man was selling narcotics
at a nearby Chevron station.  He arrived
at the Chevron station and observed a vehicle and a person inside that vehicle
who matched the descriptions provided by the tipster.  He testified that when appellant rolled his
window down, he immediately noticed the “strong[,] distinct [odor] of marijuana
coming from [appellant’s] person and from within the vehicle.”

“Texas courts have found probable
cause to search based solely on the smell of [marijuana].”  Dickey
v. State, 96 S.W.3d 610, 613 (Tex. App.—Houston [1st Dist.] 2002, no pet.);
Taylor v. State, 20 S.W.3d 51, 55
(Tex. App.—Texarkana 2000, pet. ref’d) (“Texas courts have found probable cause
for searches and arrests based on officers having detected an odor of
[marijuana] in their vicinity, where there was no evidence that the [marijuana]
had been burned.”).

          In State v. Crawford, the Dallas Court of
Appeals addressed whether the trial court correctly granted a motion to
suppress marijuana found in a vehicle. 
120 S.W.3d 508, 509 (Tex. App.—Dallas 2003, no pet.).  The arresting officers received a “reckless
driver call,” arrived at a truck stop, saw the car that matched the description
given in the dispatch, and approached the vehicle.  Id.  The driver’s side window was open and the
officers “immediately” noticed that Crawford’s eyes were bloodshot and glassy
and that a strong odor of burned marijuana was coming from the vehicle.  Id.  The Dallas court held that the officers were
free to approach Crawford at the truck stop and that “[n]o facts were necessary
to justify the officers[’] encounter with Crawford.”  Id.
at 510.  As a result of Crawford’s
appearance and the smell of burning marijuana, the officers “immediately
developed probable cause to believe the car contained marijuana,” and the trial
court therefore erroneously granted the motion to suppress.  Id.
at 510–11.

          Here,
after Deputy Chapa permissibly approached appellant’s vehicle and knocked on
the window, appellant rolled down the window and Chapa could immediately smell
the strong odor of marijuana emanating from both appellant and his
vehicle.  This marijuana odor provided
grounds for Deputy Chapa to convert the consensual encounter with appellant into
a detention to investigate the presence of contraband.  The odor, combined with the anonymous tip,
provided probable cause to search appellant and his vehicle.[10]  See id.
at 510; Dickey, 96 S.W.3d at 613.

          We
therefore conclude that because Deputy Chapa had developed probable cause by
the time his encounter with appellant escalated to an investigatory detention,
Chapa legally detained appellant at the Chevron station.

          We
overrule this sub-part of appellant’s first issue.

C.              
Warrantless Search of Appellant’s
Apartment

Appellant also contends, in his
first issue, that the trial court erred in denying his motion to suppress the
evidence obtained from his apartment because Deputy Chapa did not obtain a
warrant prior to the search and no exception to the warrant requirement
applied:  exigent circumstances were not
present and Johnson’s consent to search was involuntary, and, thus, invalid,
because she consented due to threats from Chapa.  The State argues that the search was
permissible because appellant himself voluntarily consented to the search of
the apartment—a fact that was not
challenged by appellant on appeal—and Johnson likewise subsequently voluntarily consented to the search.  We agree with the State.

Under the Fourth Amendment, a
search conducted without a warrant issued upon probable cause is “per se unreasonable . . . subject
only to a few specifically established and well-delineated exceptions.”  Schneckloth
v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973); Reasor v. State, 12 S.W.3d 813, 817
(Tex. Crim. App. 2000).  One exception to
the warrant requirement is a search conducted with the consent of the
suspect.  Guevara v. State, 97 S.W.3d 579, 582 (Tex. Crim. App. 2003).  For consent to be a valid exception, the
suspect must have given his consent voluntarily.  Gutierrez
v. State, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007).  “The validity of a consensual search is a
question of fact, and the State bears the burden to prove by clear and
convincing evidence that consent was obtained voluntarily.”  Id.  As part of this burden, the State must prove
that consent was not the result of duress or coercion.  Id.  We examine the totality of the circumstances
surrounding the statement of consent to determine whether the suspect consented
voluntarily.  Id. at 686–87; Reasor, 12
S.W.3d at 818.

Here, although appellant challenges
Johnson’s consent as involuntary, he does not argue that his own consent was
involuntary.  Instead, he asserts that he
did not consent at all to the search of the apartment.  The record does not support this
assertion.  Deputy Chapa testified, at
both the suppression hearing and at trial, that after he discovered the
particles of marijuana in appellant’s mouth and appellant admitted that he was
at the Chevron station to sell narcotics and that he had additional narcotics
at his residence, Deputy Chapa asked appellant for his consent to search the
apartment.  Appellant gave his consent
and told Chapa precisely where the drugs were located in the apartment.  Deputy Chapa stated that he did not threaten or
coerce appellant in any way, nor did he make any promises to him to obtain his
consent.  He also testified that
appellant was “very cooperative” and both he and appellant were polite to one
another.  Deputy Chapa stated that he did
not obtain appellant’s written consent to search because Johnson was the
leaseholder for the apartment.  See Montoya v. State, 744 S.W.2d 15, 25
(Tex. Crim. App. 1987) (“A consent to search may be oral and still be valid.”),
overruled on other grounds, Cockrell v. State, 933 S.W.2d 73 (Tex.
Crim. App. 1996).  As a result, he then
asked Johnson for her written consent, which she provided.

Based on this record, the trial
court could have believed Deputy Chapa’s testimony that appellant consented to
the search of his apartment and that this consent was voluntary.  See St.
George, 237 S.W.3d at 725 (holding that trial court is sole judge of
credibility of witnesses and weight to give their testimony at suppression
hearing).  Because appellant does not
challenge the voluntariness of his consent on appeal and because the court
could also have believed that Johnson’s subsequent consent was voluntary, we
hold that the trial court did not abuse its discretion in denying appellant’s
motion to suppress the evidence found during the search of his apartment.  See
Laney, 117 S.W.3d at 857 (holding that we sustain trial court’s denial of
motion to suppress if ruling is reasonably supported by record and correct on
any theory of law applicable to case).

We overrule appellant’s first
issue.[11]

Admission of Prior Criminal Records

          In
his second issue, appellant contends that the trial court erred in admitting during
the punishment phase (1) State’s Exhibit 8 because the exhibit contained the
records of a different defendant and (2) State’s Exhibit 15 because the
fingerprint expert was unable to match the fingerprint on the exhibit to
appellant’s fingerprints, and, therefore, the State failed to provide
sufficient proof that these two exhibits were his criminal records.

A.  
State’s Exhibit 8

In the punishment phase, the trial
court may admit “any matter the court deems relevant to sentencing, including
but not limited to the prior criminal record of the
defendant . . . .”  Tex. Code Crim. Proc. Ann. art. 37.07
§ 3(a)(1) (Vernon Supp. 2010).

The first two pages of State’s Exhibit
8 are a judgment and sentence against “Dennis Johnson, Jr.” for the possession
of marijuana in the County Criminal Court at Law Number 14 of Harris County,
cause number 9623579, dated August 26, 1996. 
During the punishment phase, Deputy Schield successfully matched the
fingerprint on the possession of marijuana judgment contained in Exhibit 8 to
appellant’s fingerprints.  Exhibit 8 also
contains four pages describing the conditions of probation for a theft offense
committed by Miguel Angel Lopez, cause number 9623577, in the County Criminal
Court at Law Number 9 of Harris County, dated August 15, 1996.  Defense counsel objected to the paperwork
pertaining to Lopez on the ground that Lopez is not this particular defendant.  Appellant did not complain, either at trial
or on appeal, that the first two pages of Exhibit 8—the judgment and sentence for the possession of
marijuana offense—are
insufficient to link him to that prior offense.

          Assuming
that the trial court erred in admitting Exhibit 8 in its entirety, we hold that
the error was harmless.  Error in the
admission of evidence is non-constitutional error subject to a harm analysis
under Texas Rule of Appellate Procedure 44.2(b).  Tex.
R. App. P. 44.2(b); Jabari v.
State, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no
pet.).  We disregard any
non-constitutional error that does not affect a defendant’s substantial rights
by having a “substantial and injurious effect or influence in determining the
jury’s verdict.”  Jabari, 273 S.W.3d at 754 (citing Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)); see Tex.
R. App. P. 44.2(b).  We should not
reverse a conviction for non-constitutional error if, after examining the
record as a whole, we have “fair assurance that the error did not influence the
jury, or had but slight effect.”  Jabari, 273 S.W.3d at 754 (citing Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998)).

          The
punishment range for the offense of possession of between four and two hundred
grams of a controlled substance, enhanced by a prior felony conviction, is
either five to ninety-nine years’ confinement, or life, and a fine of up to
$10,000.  See Tex. Penal Code Ann.
§§ 12.32, 12.42(b) (Vernon 2011). 
Here, the jury assessed punishment at eight years’ confinement, which is
on the low end of the punishment range. 
The State presented ample evidence of appellant’s guilt, including
appellant’s admissions that he swallowed a bag of marijuana when he saw Deputy
Chapa pull into the Chevron station, that he was at the Chevron station for the
purpose of selling marijuana, and that he possessed marijuana and powder
cocaine at his apartment.  The trial
court also admitted evidence of five previous convictions, all of which were
drug-related.  We therefore conclude that
the trial court’s admission of Exhibit 8, which included the probation
conditions for another defendant in addition to appellant’s unchallenged
judgment and sentence for possession of marijuana, could not have caused more
than a slight influence on the jury’s punishment decision.  See
Jabari, 273 S.W.3d at 754.  We
therefore hold that the trial court’s admission of Exhibit 8 in its entirety was
harmless error.

B.  
State’s Exhibit 15

Appellant also contends that the
trial court erred in admitting Exhibit 15 because the State’s fingerprint
expert could not match the “blurred out” fingerprint on the exhibit to
appellant’s fingerprints.  According to
appellant, the State thus failed to provide sufficient proof that Exhibit 15
was his prior conviction.[12]

To establish that a defendant has
been convicted of a prior offense, the State must prove beyond a reasonable
doubt that (1) a prior conviction exists, and (2) the defendant is linked to
that conviction.  Flowers v. State, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); Orsag v. State, 312 S.W.3d 105, 115
(Tex. App.—Houston [14th Dist.] 2010, pet. ref’d).  There is no requirement that the fact of a
prior conviction be proven with any specific document.  Flowers,
220 S.W.3d at 921.  Although the
preferred method for proving a prior conviction is by a certified copy of a
final judgment and sentence, the State may prove the requisite elements in
numerous ways, including:  (1) the
defendant’s admission or stipulation, (2) testimony by a person who was
present when the person was convicted of the specified crime and can identify
the defendant as that person, or (3) documentary proof that contains
“sufficient information to establish both the existence of a prior conviction
and the defendant’s identity as the person convicted.”  Id.
at 921–22.  “Regardless of the type of
evidentiary puzzle pieces the State offers to establish the existence of a
prior conviction and its link to a specific defendant, the trier of fact
determines if these pieces fit together sufficiently to complete the
puzzle.”  Id. at 923.

          Here,
the State presented certified copies of judgments and sentences for five prior
offenses.  Deputy Schield was able to
positively compare and match appellant’s fingerprints to the fingerprints on
all of the judgments except State’s Exhibit 15, a conviction dated July 23,
2001, in the 263rd District Court of Harris County, cause number 869105, for the
offense of possession of between four and two hundred grams of cocaine with
intent to deliver, committed on February 15, 2001.  Deputy Schield testified that he could not
make a positive comparison of these fingerprints because the fingerprint on
Exhibit 15 was too blurry.

          The
trial court also admitted, without objection, State’s Exhibit 13, a “jail
card.”  This jail card is in the name of
Dennis Johnson, “aka Dennis Johnson, Jr.,” and reflects an arrest on February
15, 2001, for the offense of possession with intent to deliver between four and
two hundred grams of a controlled substance. 
The card states that the offense was tried in the 263rd District Court
of Harris County in cause number 0869105. 
The card also contains fingerprints, which Deputy Schield successfully
compared and matched to appellant’s fingerprints.  Deputy Schield also testified that the cause
numbers on State’s Exhibit 13—the jail
card—and State’s Exhibit 15—the judgment and sentence—matched.[13]

          We
conclude that, based on the totality of the evidence presented by the State,
the State produced sufficient evidence to prove beyond a reasonable doubt that
appellant was linked to the prior conviction of possession of between four and
two hundred grams of cocaine with the intent to deliver—the offense alleged in the enhancement
paragraph and described in Exhibit 15.[14]

          We
overrule appellant’s second issue.

Modification of Trial Court’s Judgment

          We
observed that the trial court judgment fails to reflect appellant’s plea to the
enhancement paragraph and the jury’s finding regarding the allegations contained
in that enhancement paragraph.

An appellate court has the
authority to reform a judgment to make the record speak the truth when the
matter has been called to its attention by any source.  French
v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (holding that
appellate court could reform judgment to reflect jury’s affirmative deadly
weapon finding and adopting reasoning in Asberry
v. State, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref’d) (“The
authority of an appellate court to reform incorrect judgments is not dependent
upon the request of any party, nor does it turn on the question of whether a
party has or has not objected in the trial court.”)); see also Tex. R. App. P.
43.2(b) (permitting appellate court to modify trial court judgment and affirm
as modified).

          Here,
appellant pleaded “not true” to the allegations in an enhancement
paragraph.  The jury found the
allegations in this enhancement paragraph to be true.  The judgment, however, states “N/A” for
appellant’s “Plea to 1st Enhancement Paragraph” and “N/A” for the jury’s
“Findings on 1st Enhancement Paragraph.”

          We
therefore modify the judgment to reflect that appellant pleaded “not true” to
the enhancement paragraph and that the jury found the allegations in this
enhancement paragraph to be true.  See Tex.
R. App. P. 43.2(b) (allowing appellate courts to modify judgments and
affirm as modified).

 

Conclusion

          We modify
the judgment of the trial court to reflect that appellant pleaded “not true” to
the allegations in the enhancement paragraph and that the jury found the
allegations in this enhancement paragraph to be true.  We affirm the judgment of the trial court as
modified.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Massengale.

Do
Not Publish.  Tex. R. App. P. 47.2(b).











[1]           See Tex. Health & Safety Code Ann.
§§ 481.102(3)(D), 481.115(d) (Vernon 2011).

 





[2]
          Deputy Chapa requested backup
and Harris County Sheriff’s Department Deputy J. Glaze arrived at the Chevron
station at the same time as Chapa. 
Although he did not testify at the suppression hearing, Deputy Glaze did
testify at trial.





[3]
          Deputy Glaze testified at trial
that appellant “had a strong odor of fresh marijuana coming from his person”
and that “[e]very time [appellant] talked, [Glaze] made note that [the odor]
was coming from his mouth or his person as he was speaking.”





[4]
          Deputy Chapa did not recall whether there
were any children in the vehicle at the time of the search, and he testified
that, if there had been, he would have included this information in his offense
report.  Deputy Glaze also testified at
trial that he did not recall seeing any children in the car at the Chevron
station.

 





[5]
          At trial, Deputy Chapa testified
that only Deputy Glaze and himself were present at the Chevron station.





[6]
          Deputy Chapa testified that Deputy Glaze is a
canine handler, but he did not recall whether a police dog was present during
this search.  Deputy Glaze testified that
he did not remember if he had his dog with him at the time, but he also
testified that he did not make a police report after the incident, which he
would have done if he had walked his dog around appellant’s car.

 





[7]
          Deputy Chapa testified that he did not tell
either appellant or Johnson that if they did not sign the consent to search
forms, he would take their children to Children’s Protective Services.





[8]
          Deputy Chapa testified that he did not
present the consent-to-search form to Johnson at a location other than the
Chevron station, and that they drove directly from the Chevron to appellant’s
residence.  Deputy Glaze also testified
that the officers did not make any stops when driving from the Chevron station
to appellant’s apartment.





[9]
          Deputy Glaze testified that he
was present primarily “as a cover officer for Deputy Chapa” and that he did not
say anything to appellant or Johnson.





[10]
        To the extent appellant argues
that Deputy Chapa lacked probable cause or reasonable suspicion to request that
appellant open his mouth after the search of the vehicle failed to yield
contraband, we note that “[t]he odor of [marijuana] alone is sufficient to constitute probable
cause to search a defendant’s person,
vehicle, or objects within the vehicle.” 
Small v. State, 977 S.W.2d
771, 774 (Tex. App.—Fort Worth 1998, no pet.) (emphasis added).





[11]
        At the end of his argument on the
first issue, appellant includes a section in his brief entitled “Totality of
errors that resulted in an illegal search and seizure at the appellant’s home”
and cites ten reasons why the search was impermissible.  Some of these reasons overlap with the
arguments made in appellant’s first issue (e.g., “Law enforcement had
insufficient reasonable suspicion to detain the Appellant,” “There were no
exigent circumstances justifying a search without a warrant”).  For all of these reasons, appellant provides
one sentence stating the general proposition for why the search was
impermissible followed by a citation to one or two authorities.  Appellant does not attempt to apply these
propositions to this particular case or otherwise explain why these contentions
provide a basis for holding that the trial court erred in denying the motion to
suppress.  We therefore conclude that
appellant has waived these issues for inadequate briefing, to the extent they
are not addressed elsewhere in his brief with proper argument and
authorities.  See Tex. R. App. P.
38.1(i) (“The brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the
record.”).





[12]
        Appellant cites no authority for the
proposition that the defect in Exhibit 15—a judgment and sentence with a blurry fingerprint—renders the exhibit inadmissible.  Rather, appellant argues that this exhibit is
insufficient to link him to the prior convictions.  This is a sufficiency of the evidence
argument, and we construe appellant’s argument as such.





[13]
        Appellant further complains that the
admission of Exhibit 15 was improper because it reflects that the judgment was
signed on July 23, 2001, and the enhancement paragraph in the indictment
reflects that the conviction became final on July 23, 2007.  The enhancement paragraph in the original
indictment does contain the allegation that appellant was convicted of
possession with the intent to deliver a controlled substance on July 23,
2007.  The clerk’s record also includes,
however, an amended indictment in which the “2007” has been circled and
replaced with a “2001.”  Appellant raised
no complaint about the amended indictment.

 





[14]
        See Gilmore v. State, No. 14-06-00620-CR, 2007 WL 2089294, at *7
(Tex. App.—Houston [14th Dist.] July 24, 2007, pet. ref’d) (mem. op., not
designated for publication) (“Deputy Mills identified the fingerprints on the
jail cards as appellant’s and thus sufficiently linked appellant to the
offenses on these cards.  She then
matched up the jail cards with the corresponding judgments and sentences by
noting the identifying information found on each, such as appellant’s name,
birth date, and social security number, and the offense’s cause number.”).